IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM EUGENE ROHM, | ) | Case No. 3:20-cv-238 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff Adam Eugene Rohm ("Mr. Rohm") appeals from Administrative Law Judge April M. Wexler's (the "ALJ") decision finding that Mr. Rohm is no longer disabled under the Social Security Act. The Commissioner of the Social Security Administration ("Commissioner") opposed Mr. Rohm's appeal on behalf of the Social Security Administration ("SSA") and moved for summary judgment. (ECF Nos. 13, 14). Mr. Rohm did not move for summary judgment after appealing. For the reasons set forth below, the Court will **AFFIRM** the ALJ's decision and **GRANT** the Commissioner's Motion for Summary Judgment at ECF No. 13.

### I.      Procedural History

On April 29, 2013, Mr. Rohm filed a Title XVI application for Supplemental Security Income ("SSI") benefits, alleging disability with an onset date of January 1, 2013. (Tr. 84–85). On May 20, 2015, an ALJ found that Mr. Rohm was disabled as of April 29, 2013. (Tr. 93–102).

Specifically, the ALJ found that Mr. Rohm's postural orthostatic tachycardia syndrome ("POTS") was a severe impairment that limited Mr. Rohm to a residual functional capacity ("RFC") that allowed him to perform sedentary work, but that Mr. Rohm would require the option to sit or stand at will and would have to take four to five 20-minute unscheduled breaks each day due to dizziness. (Tr. 99). A vocational expert testified that given Mr. Rohm's limitations, "there [were] no jobs in the national economy that [he] could perform." (Tr. 101). Based on that testimony and the totality of the ALJ's analysis, Mr. Rohm was found to be disabled as of the date he applied for SSI benefits. (*Id.*).

Although Mr. Rohm received SSI benefits for a period of time, "[t]here is a statutory requirement that, if [a claimant] is entitled to disability benefits, [the claimant's] continued entitlement to such benefits must be reviewed periodically." 20 C.F.R. § 416.994(a); 42 U.S.C. § 1382c(a)(4)(A). In conducting this review, the SSA determined that Mr. Rohm's disabling impairment had improved as of June 29, 2018, and he was therefore no longer disabled within the meaning of the Social Security Act. (Tr. 116). That decision was upheld upon reconsideration. (Tr. 117).

Mr. Rohm then filed a written request for a hearing before an ALJ. (Tr. 232–33). On January 27, 2020, a hearing was held before the ALJ, during which Mr. Rohm, his mother, and an impartial vocational expert testified. (Tr. 37–62). The ALJ issued a final decision on February 19, 2020, concluding that, as of June 29, 2018, Mr. Rohm was no longer disabled because Mr. Rohm had experienced a medical improvement and now had the RFC to perform jobs that existed in significant numbers in the national economy. (Tr. 20–31). Mr. Rohm requested review of that

decision, but the SSA Appeals Council denied his request for review on November 2, 2020. (Tr. 1–7).

Having exhausted his administrative remedies, Mr. Rohm filed[1] a complaint with this Court on February 5, 2021, seeking review of the ALJ's decision. (ECF No. 3).[2] As the Court explains further below, Mr. Rohm's statement of facts and proof of his case need to be taken from his Complaint. Mr. Rohm's Complaint states that he has "more medical records" to add to the case. (*Id.* at 4). The Complaint also indicates that Mr. Rohm needs a "machine at night" to sleep and sees a lung doctor "every 3–6 months now." (*Id.*). The Complaint lists Mr. Rohm's lung specialist and states that he had doctors' appointments on January 20 and 29, 2021. (*Id.*)[3] The Complaint also avers that Mr. Rohm has to use "2 inhalers" and "now [a] breathing machine when [it] gets cold[.]" (*Id.*). Finally, the Complaint includes a note—written on a notepad containing the name of a State Representative—briefly describing Mr. Rohm's health and symptoms. (*Id.* at 5). With the exception of a general allegation that Mr. Rohm's "health [is] not better," (*id.* at 2, 4), and that "no job" would allow Mr. Rohm to "work the way he needs to[,]" (*id.* at 3), the Complaint launches no specific argument as to what Mr. Rohm views as erroneous in the ALJ's decision.

On March 9, 2022, the Commissioner filed an answer to Mr. Rohm's Complaint, (ECF No. 6), along with supporting documentation constituting the case record. (ECF No. 7). The Court

---

[1] Although Mr. Rohm was represented by counsel throughout his dealings with the SSA, he filed a Motion for Leave to Proceed in Forma Pauperis, (ECF No. 1), which the Court granted, (ECF No. 2), and has accordingly proceeded pro se before this Court.

[2] The procedures that must be followed to exhaust administrative remedies are set out under 20 C.F.R. § 404.900(a)(1)–(4). *Pallota v. Barnhart*, 144 F. App'x. 938, 940 (3d Cir. 2005).

[3] The Court notes that the ALJ's decision, which Mr. Rohm now challenges, was handed down on February 19, 2020, well before these doctors' appointments. (Tr. 31).

issued an Order on March 10, 2022, stating that Mr. Rohm's motion for summary judgment and brief in support were due no later than April 11, 2022. (ECF No. 8). But Mr. Rohm did not file a motion within that timeframe. Recognizing Mr. Rohm's pro se status, the Court issued a revised Order extending the deadline for Mr. Rohm to file his summary judgment motion until June 8, 2022. (ECF No. 10).[4]

After Mr. Rohm again failed to file a motion for summary judgment, on July 7, 2022, the Commissioner filed a motion requesting an enlargement of time to file his summary judgment motion. (ECF No. 11). The Court granted the Commissioner's motion the following day, (ECF No. 12), giving the Commissioner until August 8, 2022, to file his motion for summary judgment. (ECF No. 12). The Commissioner timely filed his motion for summary judgment on August 8, 2022, along with a brief in support of that motion. (ECF Nos. 12, 13).

On February 2, 2023, a correspondence to the Court from Mr. Rohm was docketed. (ECF No. 15). The correspondence primarily describes Mr. Rohm's health and symptoms, and states that Mr. Rohm was unable to obtain an attorney for this federal court action. (*Id.* at 1–5). The correspondence also lists Mr. Rohm's doctors, (*id.* at 6), and includes a July 2021 note from one of Mr. Rohm's doctors requesting that he be excused from jury duty due to his symptoms. (*Id.* at 1). However, because the Court's review is limited to "determin[ing] whether the administrative record contains substantial evidence supporting [the ALJ's] findings[,]" the Court cannot consider Mr. Rohm's correspondence in analyzing the Commissioner's Motion for Summary Judgment. *Hernandez v. Comm'r of Soc. Sec.*, 230 F. App'x 130, 130 n.2 (3d Cir. 2007).

## II.    Applicable Law

---

[4] The Court forwarded both Orders delineating the briefing schedule to Mr. Rohm at his address of record.

### a.  Standard of Review

This Court's review is limited to a determination of whether the administrative record contains substantial evidence supporting the ALJ's factual findings and whether the ALJ applied the proper legal standards in evaluating the evidence. *See Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014). The Court "review[s] the ALJ's application of the law de novo." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007).

With respect to the Court's factual review, "[t]he Commissioner's findings of fact are binding if they are supported by substantial evidence." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). "Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court "review[s] the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak*, 777 F.3d at 610 (quoting *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). If the ALJ's factual findings were reached according to the correct legal standards and are supported by substantial evidence, the Court is bound by them, "even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

Because Mr. Rohm is currently unrepresented, the Court must, at a minimum, conduct a "searching investigation of the record" to determine whether the above requirements were satisfied. *Brittingham v. Weinberger*, 408 F. Supp. 606, 611 (E.D. Pa. 1976). And, as Mr. Rohm has not responded to the Commissioner's Motion for Summary Judgment, "[his] statement of facts

and proof of [his] case, will need to be taken from [his] Complaint." *Shissler v. Kijakazi*, Case No. 3:20-cv-167, 2023 WL 131394 at *3 (W.D. Pa. Jan. 9, 2023).

**b.  Evaluation Process for Continuing Disability Review**

Before an individual can receive SSI benefits, he or she must first be found to be disabled under the Social Security Act, 42 U.S.C. § 1382(a)(3)(B), which requires an ALJ to apply a five-step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Once disability is found, the Social Security Act and the regulations require the individual to be periodically reviewed in order to continue receiving benefits. *See* 42 U.S.C. § 1382c(a)(4)(A); 20 C.F.R. § 416.994(a). In these continuing disability reviews, the Commissioner must determine whether there has been any medical improvement in the individual's impairment, and if so, whether the medical improvement is related to the individual's ability to work and whether one or more of the exceptions to medical improvement applies. 20 C.F.R. § 416.994(b).

"Medical improvement is any decrease in the medical severity of [an individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [found the individual to be] disabled or continued to be disabled." *Id.* § 416.994(b)(1)(i). Medical improvement is related to an individual's ability to work if there is "a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision *and* an increase in [the individual's] functional capacity to do basic work activities," which are "abilities and aptitudes necessary to do most jobs." *Id.* § 416.994(b)(1)(iii)–(iv). A determination that an individual's medical improvement related to his or her ability to work has occurred does not mean that the individual's disability has ended "unless it is also shown that [the individual is] currently able to engage in substantial gainful activity[.]" *Id.* § 416.994(b)(1)(iii).

When determining whether medical improvement has occurred, the ALJ compares the claimant's current medical severity of impairment(s) to the medical severity of the claimant's impairment(s) that were present at the time of the most recent favorable medical decision. The most recent favorable medical decision is referred to as the "comparison point decision" ("CPD") and is the most recent finding of disability or continuing disability. *See id.* § 416.994(b)(1)(vii). A seven-step evaluation process is then employed for continuing disability review. 20 C.F.R. § 416.994(b)(5).

At step one, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.994(b)(5)(i). If the claimant does have such an impairment(s), then the claimant's disability will be found to continue and the analysis ends. *Id.*

At step two, the ALJ must determine if there has been medical improvement in the claimant's impairment(s). *Id.* § 416.994(b)(5)(ii). If there has been medical improvement because of a decrease in medical severity, the analysis proceeds to step three. *Id.* If there has been no decrease in medical severity, there has been no medical improvement and the analysis proceeds to step four. *Id.*

At step three, the ALJ must determine if the medical improvement is related to the claimant's ability to do work, "i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination." *Id.* § 416.994(b)(5)(iii). If medical improvement is not related

to the claimant's ability to do work, the analysis proceeds to step four. *Id.* If medical improvement is related to the claimant's ability to do work, the analysis proceeds to step five. *Id.*

At step four, the ALJ must determine if any exceptions to medical improvement apply. 20 C.F.R. § 416.994(b)(5)(iv). If no exception applies, then the claimant's disability continues and the analysis ends. *Id.* If an exception from the first group of exceptions to medical improvement applies, the analysis proceeds to step five. *Id.* If an exception from the second group of exceptions to medical improvement applies, the claimant is no longer considered to be disabled and the analysis ends. *Id.* If no exception applies, the claimant's disability is found to continue. *Id.*

At step five, the ALJ must determine whether all of the claimant's current impairment(s) in combination are severe and if the impairment(s) impacts the claimant's ability to function. *Id.* § 416.994(b)(5)(v). If evidence demonstrates that the impairment(s) significantly limits the claimant's ability to do basic work activities, then the impairment(s) is found to be severe and the analysis proceeds to step six. *Id.* If the impairment(s) is not found to be severe, then the claimant is no longer considered to be disabled and the analysis ends. *Id.*

At step six, the ALJ must assess the claimant's current ability to engage in substantial gainful activity by assessing the claimant's RFC based on the claimant's current impairment(s) and whether the claimant is able to perform past relevant work. *Id.* § 416.994(b)(5)(vi). If the claimant is able to perform past relevant work, then the claimant is no longer considered to be disabled and the analysis ends. *Id.* If the claimant is not able to perform past relevant work, the analysis proceeds to step seven. *Id.*

At step seven, the ALJ must determine whether the claimant is able to perform any other work based on the claimant's current RFC as well as the claimant's age, education, and past work

experiences. *Id.* § 416.994(b)(5)(vii). If the claimant is able to perform other work, then the claimant is no longer considered to be disabled and the analysis ends. *Id.* If the claimant is unable to perform any other work, then the claimant's disability continues and the analysis ends. *Id.*

### III.   Discussion

Having reviewed the relevant materials—i.e., the evidentiary record, the ALJ's decision, the Commissioner's Motion for Summary Judgment and supporting brief, and Mr. Rohm's Complaint—the Court finds that the ALJ applied the correct legal standard and reached her conclusion based on factual findings supported by substantial evidence.

First, the Court finds that the ALJ applied the proper seven-step sequential evaluation process for continuing disability review and made her factual findings in accordance with that process. Mr. Rohm did not allege any specific misapplications of law by the ALJ in his Complaint, and the Court's review identifies no legal errors. The Court is therefore satisfied that the Commissioner applied the proper legal standard.

Second, the Court finds that the ALJ's factual findings are supported by substantial evidence for the following reasons.

#### a.   Step One

The ALJ first determined that Mr. Rohm's CPD—his most recent favorable medical decision—was the prior decision dated May 20, 2015, where Mr. Rohm was initially found to be disabled. (Tr. 24). The ALJ noted that at the time of the CPD, Mr. Rohm's POTS was identified as a medically determinable impairment. (Tr. 25).

Then, pursuant to step one, the ALJ found that since June 29, 2018, and continuing to the present, Mr. Rohm has the following medically determinable impairments: "POTS, bicuspid

aortic valve with mild aortic insufficiency, sleep apnea, and obesity." (*Id.*). However, the ALJ determined that the combination of these impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). The ALJ explained that "[t]he severity of the claimant's physical impairments, considered singly and in combination, does not meet or medically equal the criteria of any impairment listed in section 3.00 Respiratory System, 4.00 Cardiovascular System, or 11.00 Neurological Disorders." (*Id.*).

After an examination of the record, the Court finds that substantial evidence supports the ALJ's factual findings at step one. As the Commissioner notes in his Motion for Summary Judgment, Mr. Rohm's (previous) counsel did not argue at the administrative hearing that Mr. Rohm's impairments met or equaled a listing. (Tr. 39–62); *see Upshur v. Colvin*, No. 14-cv-877, 2015 WL 1405457, at *5 (W.D. Pa. Mar. 26, 2015) ("'[T]he ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ.'") (quoting *Cassity v. Colvin*, No. 14-cv-7, 2015 WL 853042, at *10 (E.D. Ky. Feb. 26, 2015)).

Moreover, the ALJ specifically noted that Mr. Rohm's impairments did not satisfy the criteria of impairments with respect to respiratory systems, cardiovascular systems, or neurological disorders. *See id.* at *4 ("[A]n ALJ is not required to specifically mention a particular Listing in h[er] decision" in order to find that the claimant's impairments to not meet the criteria of the relevant listings). And, to be sure, the record is devoid of evidence that would support the conclusion that Mr. Rohm's medical impairments, in isolation or combination, meet or medically equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Accordingly, the Court concludes that the ALJ's analysis at step one is supported by substantial evidence.

b.  **Step Two**

At step two, the ALJ found that medical improvement occurred on June 29, 2018, as "there had been a decrease in medical severity of the impairment present at the time of the CPD." (Tr. 25). "At the CPD," the ALJ explained, "the record showed the claimant [] experience[d] continued symptoms of dizziness, headaches, confusion, and difficulty breathing with minimal exertion despite taking medications three times a day for POTS[.]" (*Id.*). A consultative examiner also found that, at the time of the CPD, Mr. Rohm "could not sit, stand, and/or walk for a total of 8 hours due to these symptoms[.]" (*Id.*).

However, as of June 29, 2018, the ALJ explained that "the record shows that claimant's POTS [has been] controlled with medication and routine management. The most recent treatment records show the claimant's blood pressure to be very well controlled[.]" (*Id.*). The ALJ reasoned that Mr. Rohm's "activities of daily living show a greater degree of functionality" than indicated by Mr. Rohm's testimony that he continues to experience blood pressure fluctuations, fatigue, and headaches. (*Id.*). The ALJ noted that Mr. Rohm reported working on a family farm during warm weather with some symptoms, he goes for walks for a half an hour at a time when the weather cooperates, and he hunts, fishes, and occasionally drives. (*Id.*).

The Court finds that substantial evidence supports the ALJ's factual findings at step two. A January 17, 2020, progress note—cited by the ALJ—noted that Mr. Rohm's home blood pressure reports showed that "his blood pressure is very well controlled[.]" (Tr. 684). That report also noted that Mr. Rohm's "systemic pressure [was] well controlled" on the day of his visit. (Tr. 687). Another progress note, based on a January 18, 2017, doctor's visit, noted that although Mr. Rohm was diagnosed with POTS, "he has responded beautifully" to medication and his "blood

pressure seems to be very well-controlled." (Tr. 549, 552). Moreover, Mr. Rohm's testimony before the ALJ confirms that his activities of daily living match the ALJ's description at step two. (*See* Tr. 44–48).

In all, the Court finds that the record evidence reasonably supports the conclusion that the severity of Mr. Rohm's POTS—the medical impairment found at the time of the CPD—had decreased from the date of Mr. Rohm's CPD to June of 2018. *See* 20 C.F.R. § 416.994(b)(2)(i) (defining a "[m]edical improvement" as "any decrease in the severity of impairment(s) present at the time of the most recent favorable medication decision"). Thus, the ALJ's factual findings at step two are supported by substantial evidence.

### c. Step Three

At step three, the ALJ found that Mr. Rohm's medical improvement was related to his ability to work because the medical improvement resulted in an increase in Mr. Rohm's RFC. (Tr. 26). At the CPD, Mr. Rohm had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except that he requires the option to sit or stand at will and he would have to take 4 to 5 unscheduled breaks each day due to dizziness, lasting approximately 20 minutes each." (Tr. 99).

Upon review, the ALJ found that as of June 29, 2018, Mr. Rohm has had the RFC "to perform sedentary work except he cannot climb ladders, ropes, or scaffolds. He can occasionally crouch and crawl. He can have no concentrated exposure to extreme heat, extreme cold, wetness, humidity, pulmonary irritants, or hazards. He can perform simple, routine tasks." (Tr. 26). In making this RFC assessment, the ALJ noted that she did not consider impairments that had developed after the CPD. *See* 20 C.F.R. § 416.994(b)(5)(iii) ("If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance

with paragraphs (b)(1)(i) through (b)(1)(iv) of this section; i.e., whether or not there has been an increase in the [RFC] based on the impairment(s) that was present at the time of the [CPD].").

The ALJ noted that: (1) Mr. Rohm's medication dose was decreased and he tolerated that adjustment without recurrent symptoms; (2) he had been more active on the farm, and his doctor believed that this vigorous exertion helped his condition; (3) recent treatment records show that Mr. Rohm's blood pressure is now well controlled, and he has repeatedly denied symptoms such as palpitations, lightheadedness, syncope, edema, or orthopnea; and (4) Mr. Rohm's doctor indicated that he was doing pretty well with his impairments on his current medication regimen. (Tr. 26). The ALJ also highlighted that Mr. Rohm testified that he only sees his cardiologist once every six months and takes two blood pressure medications. (*Id.*).

The ALJ then found that because "the record generally notes the claimant [has done] well with his medical regimen and that his blood pressure [is] generally well controlled, . . . [Mr. Rohm] can perform a greater range of sedentary work" than that contemplated by Mr. Rohm's RFC at the time of the CPD. (*Id.*). Accordingly, the ALJ concluded that Mr. Rohm's medical improvement was related to work because "the residual functional capacity [Mr. Rohm] has had since June 29, 2018[,] is less restrictive than the one [Mr. Rohm] had at the time of the CPD." (*Id.*).

With respect to step three, the Court finds that substantial evidence supports the ALJ's factual findings. As the ALJ noted, record evidence shows that Mr. Rohm has responded "beautifully to midodrine and beta blockade[,]" even when his medication dose was decreased. (Tr. 682). And, as previously discussed, the medical evidence in the administrative record indicates that Mr. Rohm's blood pressure is now "very well-controlled." (Tr. 552); (*see also* Tr. 684) (explaining that Mr. Rohm's "blood pressure is very well controlled"). The ALJ also correctly

noted that the medical evidence contained a statement that Mr. Rohm was "doing pretty well" with respect to the issues he faced as a result of his POTS. (Tr. 687).

Based upon this record evidence, the Court finds that the ALJ reasonably concluded that Mr. Rohm's RFC—which is "the most" Mr. Rohm can do despite his limitations, based on "all the relevant evidence in [his] case record[,]" 20 CFR § 416.945(a)—had increased since the date of Mr. Rohm's CPD, due to the improvements in Mr. Rohm's symptoms evidenced by the relevant medical evidence. Because the above evidence reasonably supports a finding that Mr. Rohm's medical improvement was related to his ability to work, the Court finds that the ALJ's factual findings at step three are supported by substantial evidence.

### d.  Step Five

Because the ALJ found that Mr. Rohm's medical improvement was related to his ability to work, the ALJ appropriately did not consider step four in her evaluation. *See* 20 C.F.R. § 416.994(b)(5)(iii)–(iv).

At step five, the ALJ found that since June 29, 2018, Mr. Rohm "has continued to have a severe impairment or combination of impairments" because his "POTS and bicuspid aortic valve with only mild aortic insufficiency cause more than minimal limitation in [his] ability to perform basic work activities." (Tr. 26).

However, the ALJ found that Mr. Rohm's "sleep apnea and obesity are non-severe as they do not cause more than minimal limitation in his ability to perform basic work activities." (*Id.*). The ALJ explained that Mr. Rohm's doctor indicated that his "sleep apnea is 'borderline' and currently untreated." (*Id.*). "Although the record noted a slight elevated body mass index of 31.42," the ALJ reasoned, Mr. Rohm "alleged no specific limitations due to obesity." (*Id.*). The ALJ

also noted that: (1) Mr. Rohm's physical examinations "consistently revealed musculoskeletal, respiratory, and cardiovascular findings within normal limits"; and (2) Mr. Rohm reported being able to engage in "splitting wood, hunting, fishing, and walking[.]" (*Id.*).

The Court finds that, after reviewing the record, the ALJ's step-five finding that Mr. Rohm has had a severe impairment or combination of impairments since June 2018 is supported by substantial evidence.

First, the ALJ's conclusion that Mr. Rohm's POTS and bicuspid aortic valve with only mild aortic insufficiency cause more than minimal limitation on Mr. Rohm's ability to perform basic work activities is supported by record evidence. For example, at the hearing before the ALJ, Mr. Rohm testified that he experienced symptoms from these impairments, including headaches and difficulty controlling his blood pressure, which affected his ability to work. (Tr. 42, 50). Medical evidence in the record supports Mr. Rohm's assertions. A 2017 progress note recognized Mr. Rohm's medical impairments (POTS and bicuspid aortic valve) and indicated that Mr. Rohm occasionally suffers from headaches. (Tr. 558). Another progress note stated that Mr. Rohm, at points, had "some troubles with higher blood pressures." (Tr. 612). And yet another progress note stated that, with respect to Mr. Rohm's medical impairments, he "finds it difficult to complete [] work due to symptoms." (Tr. 674).

This constitutes substantial evidence that reasonably supports the ALJ's conclusion that Mr. Rohm's impairments are severe, as step five requires. *See* 20 C.F.R. § 416.994(b)(5)(v) (explaining that, at step five, the ALJ's severity determination "consider[s]" the "impact of the combination" of a claimant's "impairments on [the claimant's] ability to function" and "do basic work activities"); *see also id.* § 416.929(d)(1) (explaining that a claimant's "symptoms, such as . . .

fatigue, [or] shortness of breath . . . are considered in making a determination as to whether [the claimant's] impairment or combination of impairment(s) is severe"); *Shissler*, 2023 WL 131394 at *8 (finding that record evidence showing that the claimant experienced "difficulty" in functioning due to his medical impairments constituted substantial evidence supporting the ALJ's conclusion that the claimant's impairments were severe).

Second, the Court finds that the ALJ's conclusion that Mr. Rohm's sleep apnea and obesity are non-severe is also supported by substantial evidence. As the ALJ noted in her findings, Mr. Rohm's medical records show that although Mr. Rohm was diagnosed with sleep apnea "as a baby [in] 2004[,]" his sleep apnea was "borderline" on a recent test. (Tr. 549). Evidence elsewhere in the record states that Mr. Rohm "has borderline sleep apnea that is currently untreated[,]" and that Mr. Rohm's "pulmonary pressures" were "normal in the past" but would be reassessed on further testing. (Tr. 615). Mr. Rohm also testified before the ALJ that he was not receiving treatment for sleep apnea. (Tr. 43). Because the record evidence reasonably shows that Mr. Rohm's sleep apnea had not caused more than minimal limitations in Mr. Rohm's ability to perform basic work activities, the Court finds that the ALJ's conclusion that this impairment was not severe is supported by substantial evidence.

The same conclusion applies to Mr. Rohm's alleged impairment of obesity, as the record evidence supports the ALJ's determination that that impairment was non-severe. Before the ALJ, Mr. Rohm did not allege that his obesity limited his ability to work. (Tr. 39–61). Mr. Rohm's medical records also show that Mr. Rohm "remain[ed] very active on the family farm[,]" splitting wood without chest pain, dyspnea, lightheadedness, or syncope. (Tr. 558). The 2017 progress note also stated that Mr. Rohm had "normal respiratory effort" and that despite an aortic valve issue,

his "[e]xtended cardiovascular examination was otherwise unremarkable." (Tr. 560). The Court finds that this record evidence reasonably supports the ALJ's conclusion that Mr. Rohm's obesity did not cause more than a minimal limitation in his ability to perform basic work activities, and therefore bolsters the ALJ's conclusion on this score with substantial evidence.

    e.  **Step Six**

At step six, the ALJ found that since June 29, 2018, Mr. Rohm has had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except he cannot climb ladders, ropes, or scaffolds. He can occasionally crouch and crawl. He can have no concentrated exposure to extreme heat, extreme cold, wetness, humidity, pulmonary irritants, or hazards. He can perform simple, routine tasks." (Tr. 26). The ALJ based her RFC determination "on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all [Mr. Rohm's] medically determinable impairments." (Tr. 27). And in making her evaluation, the ALJ noted that she had "considered the medical opinion(s), prior administrative medical finding(s), and additional relevant evidence." (Tr. 28).

The ALJ supported her RFC determination with an extensive discussion of the record evidence, including: (1) Mr. Rohm's testimony regarding his symptoms and daily activities, (2) Mr. Rohm's mother's testimony regarding the same, (3) multiple progress notes indicating Mr. Rohm's improvement with respect to his impairments and symptoms, (4) Mr. Rohm's treatments records, and (5) prior administrative medical findings. (Tr. 26–29).

The ALJ also determined that Mr. Rohm had no past relevant work. (Tr. 29); 20 C.F.R. § 416.994(b)(5)(vi) (explaining that, at step six, the ALJ must assess the claimant's RFC and consider whether the claimant "can still do work [he or she has] done in the past").

After an examination of the record, the Court finds that substantial evidence supports the ALJ's determination of Mr. Rohm's current RFC at step six. The ALJ properly concluded that Mr. Rohm's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision." (Tr. 28). "Accordingly," the ALJ explained, "these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (*Id.*); *see also* 20 C.F.R. § 416.929(c)(4) (explaining that the ALJ must consider whether "there are any conflicts between [the claimaint's] statements and the rest of the evidence," and that a claimant's "symptoms" will be "determined to diminish [the] capacity for basic work activities . . . to the extent that [the claimant's] alleged functional limitations and restrictions . . . can be reasonably accepted as consistent with the objective medical evidence and other evidence").

The ALJ also found that Mr. Rohm had "described activities of daily living that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 29) Specifically, the ALJ noted that: (1) Mr. Rohm testified that he is able to work on his family's farm for 30 minutes per day; (2) his treatment records reported that Mr. Rohm stated that he was "very active" on the family farm, splitting wood with an 8-pound maul; (3) he walks for half an hour each way across his parent's property to watch animals; (4) he occasionally drives; and (5) he feeds pets, fishes and hunts, prepares simple meals, does laundry, and shops in stores. (Tr. 29). Each assertion is supported by record evidence, and therefore constitutes substantial evidence supporting the ALJ's RFC determination. *See Murawski v. Kijakazi*, No. 1:22-cv-1786, 2023 WL 4534603, at *43 (M.D. Pa. July 13, 2023) (finding that the "ALJ's RFC

determination . . . is supported by substantial evidence" where the ALJ "considered [the claimant's] subjective symptoms but found that the objective findings and [the claimant's] activities of daily living did not support [the claimant's] alleged level of limitation").

Moreover, the ALJ noted that the "prior administrative medical finding that the claimant can perform medium work is persuasive as it is supported and consistent with the overall evidence of record[.]" (Tr. 29). That prior administrative medical finding recognized Mr. Rohm's CPD but concluded that when the CPD and the current medical evidence were reviewed and compared, there was medical improvement. (Tr. 108–09). The administrative medical finding also found that: (1) Mr. Rohm could occasionally lift and/or carry 50 pounds, (2) he could frequently lift and/or carry 25 pounds, (3) he could stand and/or walk about 6 hours in an 8-hour workday, (3) he could push and/or pull and unlimited amount, and (4) he had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 112–13). Thus, the prior administrative medical finding concluded that Mr. Rohm demonstrated the maximum sustained work capability for medium work. (Tr. 114).

Nonetheless, the ALJ did not fully adopt the prior administrative medical finding that Mr. Rohm was capable of performing medium work. Instead, the ALJ limited Mr. Rohm to "simple, sedentary work with postural and environmental limitations to accommodate for his fatigue and testimony that he has more difficulty controlling his symptoms when it is extremely hot." (Tr. 29).

Because the above evidence—extensively discussed by the ALJ in her findings—reasonably supports the ALJ's determination of Mr. Rohm's current RFC, the Court finds that the ALJ's findings at step six are supported by substantial evidence.

### f.   Step Seven

Finally, at step seven, the ALJ determined that "[s]ince June 29, 2018, considering [Mr. Rohm's] age, education, work experience, and residual functional capacity based on the current impairments, [Mr. Rohm] has been able to perform a significant number of jobs in the national economy." (Tr. 29–30). Accordingly, the ALJ found that Mr. Rohm's disability had ended on June 29, 2018, and Mr. Rohm had not become disabled again since that date. (Tr. 30).

In so concluding, the ALJ noted that if Mr. Rohm had the RFC to "perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.27." (*Id.*). However, because Mr. Rohm's RFC indicated that his "ability to perform all or substantially all of the requirements of [sedentary] work has been impeded by additional limitations[,]" the ALJ requested the testimony of a vocational expert. *See* 20 C.F.R. § 416.966(e). That vocational expert testified that a hypothetical individual matching Mr. Rohm's age, education, and RFC—including all limitations—would be able to perform several sedentary jobs in the national economy. (*Id.*).

As to step seven, the Court finds that substantial evidence supports the ALJ's factual findings. This finding is supported both by the ALJ's RFC assessment, discussed above, and by the vocational expert's testimony.

At the hearing, the ALJ first asked the vocational expert to focus on a "hypothetical individual of the claimant's age, and education[,]" who: (1) "can never climb ladders, ropes, or scaffolds"; (2) "can occasionally crouch and crawl"; (3) and cannot tolerate "concentrated exposures to extreme heat, extreme cold, wetness, humidity, pulmonary irritants, or hazards." (Tr. 58). The ALJ then asked whether jobs existed in the national economy for that "hypothetical

individual" if he was limited to "sedentary work" and performing "simple, routine tasks[.]" (*Id.* at 59, 61).[5]

The vocational expert testified that jobs existed in significant numbers in the national economy for such a hypothetical individual, such as the sedentary unskilled jobs of addresser, charge account clerk, and document preparer.[6] (Tr. 59–61). The ALJ further noted that the vocational expert confirmed that his testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). (Tr. 31, 60–61); *see, e.g., Green v. Astrue*, No. 10-468, 2010 WL 4929082, at *17–18 (W.D. Pa. Nov. 30, 2010) (citing *Gibbons v. Barnhart*, 85 F. App'x 88 (10th Cir. 2003) (finding that "the ALJ was entitled to rely upon the [vocational expert]'s testimony" where the "[vocational expert] stated that his testimony was consistent with the DOT")).

Because the above evidence reasonably supports a finding that Mr. Rohm's previously disabling medical condition improved to an extent that would allow Mr. Rohm to perform certain jobs in the national economy, the Court finds that the ALJ's findings at step seven are supported by substantial evidence. *See Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 288 (3d Cir. 2006) (finding that "the testimony of the vocational expert provides substantial evidence to support the ALJ's findings that [there] were a significant number of jobs in the national economy that [the claimant]

---

[5] The Court notes that this hypothetical matches exactly with the ALJ's determination of Mr. Rohm's RFC based on his current impairments. (*See* Tr. 26).

[6] The Court notes that the vocational expert first responded that the hypothetical individual could perform these sedentary jobs before the ALJ included a limitation to simple, routine tasks in her hypothetical. (Tr. 60–61). However, the ALJ later included the limitation to simple, routine tasks in the hypothetical, and the vocational expert confirmed that such a hypothetical individual could perform the jobs the vocational expert previously described at the sedentary level. (*Id.* at 61). The vocational expert also confirmed that this answer was consistent with the Dictionary of Occupational Titles. (*Id.*).

could perform" where the "description provided by the ALJ of [the claimant's] exertional and non-exertional limitations . . . accurately reflected [the claimant's] limitations").

IV.     **Conclusion**

      For the foregoing reasons, the Court finds that the ALJ applied the correct legal standard and reached her conclusions based on factual findings supported by substantial evidence. The Court will therefore affirm the ALJ's decision and grant the Commissioner's Motion for Summary Judgment at ECF No. 13.

      An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM EUGENE ROHM, | ) | Case No. 3:20-cv-238 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 29th day of March, 2024, **IT IS HEREBY ORDERED** that the ALJ's decision, (ECF No. 7-2 at 20–36), is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Commissioner's Motion for Summary Judgment, (ECF No. 13), is **GRANTED**.

**IT IS FURTHER ORDERED** that Mr. Rohm's Complaint, (ECF No. 3), is **DISMISSED**. The clerk of court is instructed to mark this case as closed.

**BY THE COURT:**

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE